## CLARK *v.* UNITED STATES.

A. residing in New Orleans and B. in Mobile during the whole rebellion, consigned cotton which they owned to C., a supervising special agent of the Treasury Department. It arrived at Mobile on the last of July or the first of August, 1865, when it was claimed by them. It was consigned to him to facilitate its arrival, as the government had at that time charge of the railroads. C. having received orders from the Treasury Department to ship all cotton received by him, shipped in the latter month that of A. and B. to New York, where it was sold. The net proceeds were paid into the treasury. A. and B. brought suit for them against the United States in the Court of Claims, March 27, 1872. *Held*, that the suit was barred by the Statute of Limitations.

APPEAL from the Court of Claims.

The facts are stated in the opinion of the court.

*Mr. Matt. H. Carpenter* and *Mr. John J. Weed* for the appellant.

*Mr. Assistant Attorney-General Smith, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is an appeal from the Court of Claims. The facts of the case cannot be more clearly or compactly stated than they are presented in the findings of the court.

The findings are as follows : —

"In July and August, 1865, the petitioners, James S. Clark and Edward Fulton, were merchants and copartners doing business at New Orleans, under the firm name and style of J. S. Clark & Co., and Joseph C. Palmer was a merchant at Mobile.

"In said July and August the petitioners were the owners jointly of nine hundred bales of cotton, which arrived at Mobile in the last part of said July or the first part of said August, consigned by them to T. C. A. Dexter, supervising special agent of the Treasury Department for the department of Alabama.

"At the times above stated the government had charge of the railroads, and the cotton was consigned to Mr. Dexter to facilitate its arrival at Mobile, and on its arrival there it was claimed of him by the petitioners.

" In August, 1865, Mr. Dexter having received orders from the Treasury Department to ship all the cotton received by him, shipped the said nine hundred bales to New York, where it arrived and was sold by the United States, and the net proceeds thereof, amounting to $127,350, were paid into the treasury.

" The said Clark and Fulton resided in New Orleans, and said Palmer in Mobile, during the whole rebellion, and this petition was filed March 27, 1872."

. The United States rely upon two defences : —

1. That the petitioners did not, within two years after the suppression of the rebellion, prefer their claim in the Court of Claims.

This limitation is prescribed by the " Act for the collection of abandoned property, and for the prevention of frauds in the insurrectionary districts of the United States," passed March 3, 1863. 12 Stat. 863. It is confined to cases arising under that act.

2. That the petition was not filed in the Court of Claims within six years after the cause of action accrued.

This limitation is found in the tenth section of the act relating to the Court of Claims, also of March 3, 1863. 12 Stat. 765. That section enacts : —

" That every claim against the United States cognizable by the Court of Claims shall be for ever barred unless the petition setting forth a statement of the claim be filed in the court, or transmitted to it under the provisions of this act, within six years after the claim first accrues: *Provided*, that claims which have accrued six years before the passage of this act shall not be barred, if the petition be filed in the court or transmitted as aforesaid within three years after the passage of this act : *And provided further*, that the claims of married women first accrued during marriage, of persons under the age of twenty-one years, first accruing during minority, and of idiots, lunatics, insane persons, and persons beyond seas at the time the claim accrued, entitled to the claim, shall not be barred if the petition be filed in the court or transmitted as aforesaid within three years after the disability had ceased ; but no other disability than those enumerated shall prevent any claim from being barred, nor shall any of the said disabilities operate cumulatively."

In the Revised Statutes of 1874, sect. 1009, the first proviso was dropped. It was then needless, the time of the saving thereby created with respect to the claims to which it related having before expired.

The counsel of the appellants have contended, in an argument of unusual research and ability, that the cotton in question was not captured or abandoned property within the meaning of the act upon that subject, and that hence the limitation in that act has no application to this case. Our view renders it unnecessary to consider this point. We therefore pass from it without further remark. The only question to be considered is whether the action is barred by the limitation of six years in the Court of Claims act before referred to.

Nothing can be clearer than the terms of the limiting section.

It begins by declaring that every claim cognizable by the court "shall be for ever barred" unless the petition "shall be filed within six years after the claim first accrued." Then follows the proviso naming the disabilities which shall arrest the running of the statute, and either of which shall give three years for the filing of the petition "after the disability has ceased." Finally, it is enacted that "no other disability shall prevent any claim from being barred, nor shall any of said disabilities operate cumulatively."

It is not claimed that any of the disabilities named affected *either of the appellants.*

In the early part of April, 1862, New Orleans was captured by the naval forces of the United States under the command of Admiral Farragut. On the 1st of May following the national military forces under the command of General Butler took possession of the city. It was never afterwards in possession of the insurgents. *Desmare* v. *United States*, 93 U. S. 605. The appellants resided there. It is a part of the public history of the country, of which we are bound to take judicial notice, that from the time last mentioned communication between that place and the seat of the national government was constant and uninterrupted.

In the case just referred to, this court said : " Upon the issuing of General Butler's proclamation, the legal *status* of New

Orleans and its inhabitants with respect to the United States became changed. Before that time the former was enemy's territory and the latter were enemies. . . . General Butler's proclamation was proof of the subjugation of the city and the re-establishment of the national authority. The hostile character of the territory thereupon ceased, and the process of rehabilitation began. The inhabitants were at once permitted to resume, under the regulations prescribed, their wonted commerce with other places, as if the State had not belonged to the rebel organization. *The Venice,* 2 Wall. 258. But they were clothed with new duties as well as new rights."

The cotton was shipped to New York in August, 1865, and there sold, and the proceeds paid into the treasury of the United States. The claim then first accrued. The petition was filed on the 27th of March, 1872. This was at least six months in excess of the six years limited by the statute.

During all this period the appellants could easily have put the proper machinery of the law in motion. The delay is unaccounted for.

The supplementary briefs filed by the parties since the argument at the bar do not, we think, call for any special remarks.

The case is clearly within the bar of the statute, and we are constrained to hold accordingly.

*Judgment affirmed.*