## W. C. PEACOCK & CO. *v.* REPUBLIC OF HAWAII.

### ORIGINAL.

SUBMITTED APRIL 1, 1898.                    DECIDED MAY 9, 1898.

JUDD, C.J., FREAR AND WHITING, JJ.

It is the duty of the court to dismiss of its own motion an action against the Government if it appears not to have been brought within the time limited by the statute. An executive officer cannot waive the statute.

A statute which alters or repeals a prior statute permitting suits to be prosecuted against the Government to final judgment but without any provision for the enforcement of such judgment, is not unconstitutional as being retrospective.

An action against the Government cannot, under our statutes, and for the purpose of taking the case out of the statute of limitations, be held to have been brought when the claim was first presented to the Executive Department.

Sec. 524 of the Civ. Code provides that moneys paid for duties under protest shall not be held by the collector to await the ascertainment of duties or the result of litigation; "but whenever it shall be shown to the satisfaction of the Minister of Finance that in any such case more money has been paid than the law requires, he shall refund the same." Held, under this statute the right of action, if any, accrues when the money is paid, not when demand is made upon the Minister.

OPINION OF THE COURT BY FREAR, J.

This is assumpsit for $1383.17, alleged to have been paid under protest as customs duties in excess of the legal rate upon liquor drawn from bond on various dates from February 11,

1893, to January 8, 1894. The alleged excess is the difference between the rate under the law previously in force and the higher rate under the law (approved January 9, 1893) then in force according to its terms, but claimed by plaintiffs not to have been in force until one year after the first public notification thereof, in view of the provisions of Article VII. of the Danish Treaty of 1846, or of this and the parity clauses in Articles III. and IV. of the British Treaty of 1852, the plaintiffs being British subjects.

Action was brought first in the Circuit Court against the Collector-General of Customs, but was held not to be within the jurisdiction of the Circuit Court, on the ground that it was really an action against the Government, of which the Supreme Court had exclusive jurisdiction. *Peacock & Co. v. Castle, ante,* 10. The present action was then brought, April 29, 1897, in this Court, and, upon demurrer, argument was heard at the last December Term—principally upon the construction of the treaties above mentioned and the decisions upon the Danish Treaty, reported in 1 Haw. Rep. The Court subsequently requested further argument upon the effect of those decisions and upon the question whether this action should not be held barred by the statute limiting the time within which actions may be brought against the Government. Such argument was heard at the recent March Term.

We need consider only the question of the statute of limitations. At the first hearing it was expressly stated by the Attorney-General on behalf of the Government that the statute was waived. The Court, however, upon consideration, took the view that the statute could not be waived by the Executive branch of the Government, but that the Legislature alone had authority to determine what actions may or may not be brought against the Government—the Government in this sense being the State and not merely the Executive branch of the State, and the Legislature being the proper mouth-piece of the State in matters of this kind. It is the duty of the court of its own motion to dismiss an action against the Government if it appears not to have been brought within the time limited by the statute.

In this respect an action against the Government differs from an action against a private person. There is no right to sue the State except so far as permitted by the State, and if the State has permitted actions to be brought against it only within a certain time, the court should not entertain an action brought after the expiration of that time. But an action may be brought against a private person and the court may entertain it without special permission from the State through its Legislature,—the statute limiting this right being merely a defense which the defendant may insist on or waive at his pleasure. *Finn v. U. S.*, 123 U. S. 231; *U. S. v. Utz*, 80 Fed. Rep. 848.

Plaintiff's counsel concede that the statute cannot be waived by an executive department or officer but contend now that the present action is not barred by the statute.

A reference to the statutes will here be necessary. Section 829 of the Civil Code (1859) provided that the Supreme Court should have jurisdiction of all actions against the Hawaiian Government, which could be instituted, however, only by permission of the King in Privy Council. Ch. 51, Laws of 1888, repealed this by providing that actions might be brought against the Government in any appropriate Court of Record upon an allowance of process by the Justices or a majority of the Justices of the Supreme Court. This Act contained the following provision: "Section 5. This Act shall be held to extend to and include causes of action which now exist, as well as those which shall arise in future; but nothing in this Act contained shall operate or be construed so as to waive any question of limitation in favor of or against the Government." Under this provision the Act was in terms to be retrospective as well as prospective and the general statute of limitations was applicable to actions against the Government, the period for actions of the kind now in question being six years under that statute. By Act 57, Sec. 36, Laws of 1892, the Circuit Courts were given exclusive jurisdiction of all actions against the Government. By Act 22, Laws of the Republic (March 15, 1895) all the provisions of the Act of 1888 which related to suits against the Government were repealed. Act 26 of the same Laws (March 16, 1895) pro-

vided that the Supreme Court should have exclusive jurisdiction of all of certain specified classes of claims against the Government, to one of which classes the claim in question belongs. This Act was copied largely from the United States statutes relating to the Court of Claims and contains many provisions,— among them the following provision as to limitations. "Section 5. Every claim against this Government, cognizable as aforesaid, shall be forever barred unless the petition setting forth a statement thereof is filed in the Court, or transmitted to it by the Secretary of the Senate or the Clerk of the House of Representatives, as provided by law, within two years after the claim first accrues. Provided, that the claims of persons under legal disability shall not be barred if the petition be filed in the Court or transmitted, as aforesaid, within one year after the disability has ceased."

This action was brought under this last statute (Act 26). The period of limitation under the old statute was six years; under this new statute it is two years. The statute took effect from the date of its publication, which was shortly after its approval, in March, 1895. At that time, some of the claims sued on were over two years old, others had a short time to run before becoming two years old and the last had nearly ten months to run before becoming two years old. Thus, all possible classes of cases are presented—claims already barred, claims having an unreasonable time to run and claims having a reasonable time to run, before becoming barred by the terms of the new statute. The question would then naturally arise, which statute, the new or the old, is to govern as to claims existing at the date of the new, where the new cuts down the period of limitation prescribed by the old. Plaintiff's counsel, in an able and elaborate argument, reviewed the authorities and the different rules that have been adopted by the various courts in the solution of this question as it has arisen upon the various classes of claims above mentioned, and argued in support of the rule that the new statute should be applied only to new claims and that the old statute should continue to apply to all old claims. This is the

only rule upon which the plaintiffs could rely, inasmuch as this action. was commenced more than two years after the new statute took effect as well as more than two years after the claims accrued.

We need not express an opinion upon the various rules referred to. They are all based on the construction and constitutionality of the statute. In this case, it is clear that the Legislature intended to repeal entirely the old statute (Act of 1888). This is shown by the passage of Act 22 (1895) which contains nothing but the repeal of the old statute, and by the passage of Act 26 (1895) which is an entirely new Act upon the subject of suits against the Government and purports to be complete in itself and to wholly cover the subject.

The only question then is as to the constitutionality of these Acts so far as they affect the claims in question, that is, Section 5 of Act 26, which allows a period of only two years and therefore by its terms bars a portion of these claims, and Act 22, which purports to repeal the old statute entirely. (If these are unconstitutional in so far as they affect these claims, then plaintiffs' counsel contend that the action is properly brought in this Court and should not be brought in the Circuit Court as under the old statute, because the change of the court affects only the remedy and not the right and consequently that the granting portion of the new statute should govern even though the limiting portion should not. Let us assume this to be so). Are, then, these statutes unconstitutional? Let us assume that if they concerned merely suits between private persons they would be unconstitutional in so far as they took away all reasonable remedy. Does it make any difference that they relate to suits against the Government? Let us assume that, as argued, the Government and its Departments as well as private individuals are subject to and bound by the Constitution in so far as it is applicable. But the same provision is not always equally applicable to the affairs of the Government and to those of private persons.

For instance, when the former case was before us (*ante*, 10) it was contended that Act 26 was unconstitutional because it did

not permit a trial by jury. The Court said: "A sufficient answer to this contention is, that the Government cannot be sued except by its own consent, and if it consents to be sued at all, it may do so upon such terms and conditions as it pleases." It is now contended that that reasoning was unsound, for the reason that it assumed that the Government or its Legislative branch was not subject to the Constitution. But it did not assume that. It assumed merely that the constitutional provision respecting the right of trial by jury was not applicable to that class of cases. Counsel did not, and could not reasonably, contend that that provision secured the right of trial against the Government; whether with or without a jury; in other words, that it placed the Government on the same level with private persons with respect to the liability to be sued, so that the right to sue the Government could not be taken away even as to claims that might arise in the future. It was contended merely that if the Government does permit itself to be sued it must permit the action to be tried by a jury, in case a similar action against a private person would be subject to the right of trial by jury. But if the Government may withhold the right of action against itself altogether and if that indeed is not a right at all but a mere privilege, granted of grace, it is difficult to see why the Government may not, of the same grace, permit itself to be sued without a jury. In other words, if it acts of grace it may extend its favors only so far as it pleases. In that case no question was raised or decided as to whether the Government might withdraw its consent after it had once given it and as to claims already existing.

That question is now raised. It is contended that Act 26 is contrary to Article 71 of the Constitution, which provides that "Except as herein provided, no Retrospective Law shall ever be enacted." Here, again, we assume that the Government acting through its Legislature is subject to the Constitution, but we hold that the constitutional provision in question is not applicable.

What are retrospective laws? The definition is not wholly

etymological; it is largely historical. To hold that every law that "looks backward" is unconstitutional, would be absurd; it would tie the hands of the Legislature so as to prevent all sorts of salutary laws harmful to no one. "Retrospective laws" have, therefore, come to have much the same meaning as "*ex post facto* laws," "laws impairing the obligation of contracts," &c. While these phrases apply in whole or in part to different sub-ject-matters, they in general mean laws that impair vested rights; and in general so long as laws do not impair vested rights they are not unconstitutional because retrospective.

Now, the power to sue the Government may be technically a right, a remedy, or something short of a remedy. If it is a right strictly speaking, it cannot be taken away by a retrospective law. For example, if the Government had entered into a con-tract with the plaintiffs permitting them to sue it upon this claim or upon claims in general, there would be a right to sue which could not arbitrarily be taken away. (See *State v. Trustees Vincennes University*, 5 Ind. 77,) although the contrary ap-pears to have been held in *State v. Bank of Tennessee*, 59 Tenn. 395, criticised by Wade, Retro. Laws, Sec. 206. In such case the right to sue would be a substantial independent right in itself, resting upon contract.

But suppose the power to sue existed independently of the con-tract; in other words, suppose it was merely a remedy. Then, if the claim were against a private individual, there would be an absolute constitutional right to some sufficient remedy, a right not depending upon the will of the Legislature or to be taken away by it. But in general there would be no right to any particular remedy, and the Legislature might take away entirely an existing remedy, provided it left or provided some other sufficient remedy. The Legislature could not take away all reasonable remedy for that would be to take away a right. But if, as in the present case, the claim is against the Government, there is not a constitutional right to some remedy, technically speaking. There can be at most only a remedy granted of grace and depending on the will of the Legislature. In such case

does the power to pursue the remedy become a right merely because the claim accrued during the continuance of the Legislative permission? Does that which the State was under no obligation to license and which it did license without any consideration become a vested right merely because during its continuance a claim arose in favor of a party and that although so far as appears the party did not act in reliance upon the license? We are not required to go so far as to answer this question. For, in this case we are of opinion that the power to sue falls short of a remedy within the meaning of that term as used when it is said that to take away all reasonable remedy would be unconstitutional, and consequently to take away the so-called remedy in question would not be retrospective legislation, for it would not amount to taking away a right. The reason why the power to sue the Government is not, strictly speaking, a remedy is because no permission is given to enforce the judgment of the court. The court is in the nature of an auditing board and the satisfaction of the claim after judgment still depends on the will of the Legislature, which may or may not make the necessary appropriation.

This is the view taken by the Supreme Court of the United States, affirming the decisions of the Supreme Courts of Tennessee and Alabama in *Railroad Co. v. Tennessee*, 101 U. S. 337 and *Railroad Co. v. Alabama, Ib.* 832. In these cases the statutes permitting suits against those States were repealed after the respective claims accrued and in the latter case after suit had been brought. In the case at bar as well as in those cases, the statute did not provide for the enforcement of the judgment. In the former case the court said: "The principle is elementary that a State cannot be sued in its own courts without its consent. This is a privilege of sovereignty. It is conceded that when this suit was begun the State had withdrawn its consent to be sued, and the only question now to be determined is whether that withdrawal impaired the obligation of the contract which the railroad company seeks to enforce. If it did,

it was inoperative, so far as this suit is concerned, and the original consent remains in full force, for all the purposes of the particular contract or liability here involved. The remedy, which is protected by the contract clause of the Constitution, is something more than the privilege of having a claim adjudicated. Mere judicial inquiry into the rights of parties is not enough. There must be the power to enforce the results of such an inquiry before there can be said to be a remedy which the Constitution deems part of a contract. Inquiry is one thing; remedy another. Adjudication is of no value as a remedy unless enforcement follows. It is of no practical importance that a right has been established if the right is no more available afterwards than before. The Constitution preserves only such remedies as are required to *enforce* a contract. Here the State has consented to be sued only for the purposes of adjudication. The power of the courts ended when the judgment was rendered. In effect, all that has been done is to give persons holding claims against the State the privilege of having them audited by the courts instead of some appropriate accounting officer. When a judgment has been rendered, the liability of the State has been judicially ascertained, but there the power of the court ends. The State is at liberty to determine for itself whether to pay the judgment or not. The obligations of the contract have been finally determined, but the claimant has still only the faith and credit of the State to rely on for their fulfillment. The courts are powerless. Everything after the judgment depends on the will of the State. It is needless to say that there is no remedy to enforce a contract if performance is left to the will of him on whom the obligation to perform rests. A remedy is only wanted after entreaty is ended. Consequently, that is not a remedy in the legal sense of the term, which can only be carried into effect by entreaty. It is clear, therefore, that the right to sue, which the State of Tennessee once gave its creditors, was not, in legal effect, a judicial remedy for the enforcement of its contracts, and that the obligations of its contracts were

not impaired, within the meaning of the prohibitory clause of the Constitution of the United States, by taking away what was thus given."

The constitutional provision in that case, it is true, related to the impairment of contract obligations and not to retrospective laws, as in the case at bar. But, as we have seen above, this is immaterial. The principle is the same. Indeed, as the Legislature might withdraw its consent to be sued as to future claims, its incapacity, if any, to do so as to accrued claims must be because the claim arose through reliance upon the consent; in other words, because the consent became part of a contract, and therefore because the withdrawal would belong to that class of *retrospective* legislation which relates to the impairment of contract obligations. We may add that the constitution of Tennessee provided (Art. 1, Sec. 20) "That no retrospective law" as well as no "law impairing the obligation of contracts, shall be made."

We therefore hold that Act 26 is not unconstitutional on the ground that it is retrospective, and that the action is barred unless it was brought within two years after the cause of action accrued. We have already seen that the action did not get into this Court until more than two years after the money was paid and also more than two years after the new statute was passed.

It is now contended, secondly, that the action began when application for the money was first made to the Executive Department. It does not appear just when such application was made, but it must have been before the date of its rejection by that Department, which was May 6, 1896, or within two years after the new statute was passed. The argument now made is based on the suppositions (1) that the Court might adopt the rule followed by some courts, that the new statute should be applied for its full period to every cause of action from the time when the cause first becomes subjected to the operation of the statute, which for existing claims would be the date of the statute, and (2) that the Supreme Court of the United States has held repeatedly under a statute similar to ours that the action must be regarded as

having been commenced when the claim was first presented to the Executive Department, in cases where it has come to the Court of Claims by reference from that Department, and provided it was presented there within the time prescribed by the statute.   As to the first of these suppositions, we have found it unnecessary in this case to say what rule, in our opinion, should be followed where a later statute cuts down the period of limitation prescribed by an earlier statute.   As to the second supposition, it will be sufficient to state that even if the Executive Department had referred the claim in question to this Court, which it did not do, and even if the claim had been presented there within the time prescribed by the statute, still the decisions relied on would be inapplicable, because as a matter of fact they were not based on a statute similar to ours, as their references to the statutes and their reasonings show.   There was, it is true, a United States statute similar to ours (Act 26, Sec. 5, above set forth) providing for the transmission of claims to the Court by the Secretary of the Senate or the Clerk of the House of Representatives, but those decisions were not based on that statute; they were based on an entirely different statute which provided for the transmission of certain claims by an Executive Department to the Court of Claims to be there proceeded with as if originally commenced there by the voluntary act of the claimant.   There is no similar provision in our statute.   *U. S. v. Lippitt*, 100 U. S. 663; *Finn v. U. S. supra; U. S. v. New York*, 160 U. S. 598; *U. S. v. Utz, supra*.

It is contended, thirdly, that the claim did not accrue until demand was made on the Minister of Finance, and, hence, that the action, which was brought less than two years thereafter, is not barred by the terms of the new statute.   It is admitted that if the action were against the Collector-General of Customs, as in the former case (*ante*, p. 10) the claim should be held to have accrued when the money was paid.   But by statute (Civ. Code, Sec. 524) the Collector is not allowed to hold moneys paid for duties under protest, to await the ascertainment of duties or the result of litigation; "but whenever it shall be shown to the

satisfaction of the Minister of Finance that in any such case more money has been paid to the Collector than the law requires, he shall refund the same out of any moneys in the treasury, not otherwise appropriated." This statute, it is contended, has the same effect as that of the United States which requires the surplus proceeds of the sale of land for taxes to be deposited in. the treasury, to be there held for the use of the owner until he shall make application therefor to the Secretary of the Treasury, who, upon such application, shall, by warrant on the treasury, cause the same to be paid to the applicant; under which statute the Supreme Court of the United States has held that the period of limitation does not begin to run until demand has been made. *U. S. v. Taylor,* 104 U. S. 216; *U. S. v. Lawton,* 110 U. S. 146; *U. S. v. Cooper,* 120 U. S. 124. A glance at the two statutes will show their dissimilarity. Under the United States statute the money was to be paid into the treasury to be there held for the use of the owner and until he should apply for it. A trust was created, and the rule applied, that the statute does not begin to run in such cases until the trustee repudiates the trust and claims in his own right and such repudiation and claim are brought to the knowledge of the *cestui que trust* in such a manner as to call upon him to assert his rights. Under our statute no trust is created. The cause of action accrued when the money was paid. See *Clark v. U. S.,* 99 U. S. 493; *U. S. v. Utz, supra.*

Our statute does not require the money to be paid upon "application" or demand, as does the United States statute; it requires it to be paid upon proof to the satisfaction of the Minister of Finance. If such proof is a condition precedent to the right of action, the right has not yet accrued, for such proof has not been made. If such proof is a condition precedent to the right to payment, as it purports to be, then either such proof must be made, that is, to the satisfaction of the Minister and not of the Court, in which case the Minister would be exclusive judge and the action could not be brought at all, or else proof to the satisfaction of the Court as shown by its judgment would

be allowable as a means of proof to the satisfaction of the Minister, in which case proof to the Minister's satisfaction would be immaterial as to the right of action and there is nothing else in the statute to postpone the right of action beyond the time when the money was paid. Consequently, if action may be brought at all, so far as this statute is concerned, it may be brought as soon as the money is paid. But this action was brought more than two years after the money was paid and therefore the right of action, if any, is barred.

The petition is dismissed.

*Kinney & Ballou* for plaintiffs.

*Deputy Attorney-General E. P. Dole* for defendant.