IN THE MATTER OF THE APPLICATION OF RICH-
ARD H. TRENT, TREASURER OF THE COUNTY
OF OAHU, FOR A WRIT OF MANDAMUS
AGAINST J. H. FISHER, AUDITOR OF THE TER-
RITORY.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED JULY 18, 1906.          DECIDED JULY 18, 1906.

FREAR, C.J., WILDER, J., AND CIRCUIT JUDGE ROBINSON IN
PLACE OF HARTWELL, J.

COUNTY REVENUES—*taxes delinquent before but collected after county*
*government.*

> Under Act 93 of the Laws of 1905, counties are entitled to be
> paid for the six months following the establishment of county
> government on July 1, 1905, fifty per centum of all poll and school
> taxes and taxes on property and incomes collected by the Terri-
> tory during that period, including the portion that became due
> and delinquent prior thereto.

STATUTORY CONSTRUCTION—*testimony of legislators inadmissible.*

> The testimony of members of the legislature which enacted a
> statute is inadmissible for the purpose of determining the con-
> struction of the statute.

OPINION OF THE COURT BY FREAR, C.J.

This is an application by the treasurer of the county of Oahu
for a writ of mandamus to compel the auditor of the Territory
to issue to him a warrant for fifty per centum of the amount
of poll and school taxes and taxes on property and incomes

which were collected by the Territory within the county of Oahu during the latter half of the year 1905 but which became delinquent prior thereto, and for which the county treasurer contends a warrant should have been issued within the first fifteen days of January, 1905, under subdivision 1 of section 1 of Act 93 of the Laws of 1905. The amount in question is $17,639.38. The circuit judge granted a peremptory writ and the Territory appeals. The question is whether the act referred to applies to taxes which became delinquent prior to the establishment of county government on July 1, 1905, but which were collected afterwards.

The act, which is entitled "An Act Relating to Funds for the Payment of Expenses of the Several Counties," begins with a provision that, "Fifty per centum of the total amount of poll and school taxes and taxes on property and incomes, collected in each county, shall be paid by the treasurer of the Territory of Hawaii to the treasurer of such county in the following manner." It is clear, and indeed is conceded, that this provision if not controlled by other provisions would cover all taxes of the classes named collected during the period in question whether delinquent before that or not. The words are "the total amount * * * collected" without any qualification whatever as to when it was assessed or when it became payable or delinquent. But it is contended that this provision is qualified by subsequent provisions in the act, and particularly by the next paragraph, which is subdivision 1 of section 1, and which is expressly referred to in the provision already quoted and made a part of it by the words "in the following manner:" It may be stated, however, in passing, that the words "in the following manner" relate solely to the method of payment and do not purport to control the "amount collected" or the classes of taxes or amount payable to the several counties. Subdivision 1, referred to, reads as follows:

"1. The Auditor of the Territory shall on the last legal day of each and every month issue a monthly warrant on the Treasurer of the Territory in favor of each County Treasurer,

such monthly Warrants for the half year from July to December 1905 inclusive, shall be in an amount not less than ten per cent, and thereafter in an amount not less than fifteen per cent, of the estimated Tax payable to each County within every half year, and within the first fifteen days of January and July in each year, the said Auditor of the Territory shall issue a Warrant on the Treasurer of the Territory in favor of each County Treasurer for an amount equal to the balance in favor of each County less the amount of the Warrants issued and interest paid for such Warrants, during the last preceding six months."

The argument is that in estimating the "taxes payable to each county within every half year" the auditor could take into account only the amount assessed to become payable or delinquent during the half year in question and not the amount payable during that period but which had become payable and delinquent prior thereto, especially as the latter amount from its very nature and from the fact that it might include amounts that had become delinquent for a number of years past could not be estimated with any degree of accuracy. To this it might be replied, although it might not be conclusive, that there could not be an accurate estimate in any event, since there would be during each period a greater or less number of delinquencies in the payment of taxes to become payable during that period, and that the estimate might be far from accurate in any event was contemplated by the legislature, for it provided for the payment of only ten and fifteen per centum respectively per month of the estimated amount in each half year, thus leaving considerable leeway for errors in the estimates, the balance, if any, to be paid after the expiration of the period of six months. Moreover, as practically already stated, this provision relates merely to the manner of payment, and even if the auditor were to estimate merely the amount to become payable during the period in question, without reference to delinquencies occurring in that period or payments of prior delinquencies, this would not necessarily show that the counties were not to share in the amounts collected on prior delinquencies. But

what perhaps is a conclusive answer to the argument is that, if it is sound at all, it applies as well to subsequent periods of six months as it does to the first period after the establishment of county government. There is nothing whatever, either in the language of this subdivision or in the supposed practical difficulties that the auditor might experience in making his estimates, upon which a distinction can be founded between delinquencies occurring before the first period and delinquencies occurring after that period but before any subsequent period; and yet it is clear, and also conceded, that it could not have been contemplated or intended that the counties should not share in the taxes which became delinquent in one period but which were collected in a subsequent period of county government. If, for instance, this subdivision showed that taxes delinquent prior to July 1, 1905, but afterwards collected, were not to be shared by the Territory with the counties, it shows equally that the counties would not be entitled to any of the taxes which became delinquent during the latter half of 1905 or the first half of 1906 but which were collected during the latter half of 1906,—which would be absurd.

It is contended further that section 4 also supports the contention of the Territory. It provides, "That out of the taxes payable after July 1, 1905, for the year 1905, the Treasurer of the Territory is hereby authorized to reserve out of the share of each of the several counties for the benefit of the Territory the following sums," naming them. The object of this was, of course, to enable the Territory to pay liabilities incurred before county government, that is, during the first half of 1905, out of the taxes collectable during the last half of that year, inasmuch as at that time the bulk of the taxes assessed during the first half of the year were collectable during the last half of the year, while now collections have been more evenly divided between the two halves of the year. It is argued that this section shows that the counties were intended to share only such taxes as were payable for the particular year that might be in question or that at least that was the intention as to the

year 1905. No doubt the section does point in that direction, and yet it is not sufficient to control the clear, unambiguous language of section 1, and is not inconsistent with it. It provides merely for the payment of certain sums out of a particular fund. On the other hand, it points, though perhaps not to the same extent, also in the opposite direction, for it tends to show that the legislature had in mind the distinction between taxes assessable and taxes collected during a particular year and enacted this section with that in view, and yet it did not make any such distinction in section 1. The fact probably is that in enacting section 1 the point now in dispute did not occur to the legislature. The question is what does the language that was used mean. For these reasons, so far as the language of the act is concerned, the contention of the Territory cannot be sustained.

It is, however, contended that the legislature must have so intended on general principles on the theory that as a business arrangement the Territory would naturally collect all amounts owing to it prior to the establishment of county government and that it and the county would naturally share amounts to become due thereafter. But a general consideration of this kind cannot control the plain language of the act. No part of the taxes were to belong inherently after the establishment of county government to the several counties nor was the Territory to retain the portion that it did on the theory that that belonged inherently to it. The whole belonged to the Territory and was thereafter to be divided in the way the legislature thought best between the Territory and the counties, which were thereafter to share the duties and expenses which previously had been borne by the Territory alone. No provision was made for the assessment, levy or collection of taxes by the counties. The whole arrangement was of an artificial nature by which the Territory was to pay the counties certain amounts with which to meet their expenses. In the long run it might not make much difference which way the provision was made. The amount of delinquent taxes collected during each period would

probably be about the same percentage of the whole. If the counties received in the first period an amount that had become delinquent prior thereto the Territory might likewise acquire after a change in the system, if a change should be made, a like amount that had become delinquent during the period of county government. The legislature may have figured on the average amounts collected in the past without analyzing them with reference to the periods for which their various parts were assessed. The act throughout shows the artificial character of the division as one based mainly on considerations of what the Territory and the several counties respectively required, excepting that the amount to be divided between the Territory and each county should have been collected in that particular county. An equal division was made of certain classes of taxes, but the Territory was to receive the whole of certain other classes. The counties, on the other hand, were, as provided in section 3, to receive the entire road taxes whether they had become delinquent before the establishment of county government or not and even though they had already been collected by the Territory but not paid out. The county was to receive fifty per centum of the school taxes, which would naturally be expected to be levied for school purposes, and yet the counties were to have nothing to do with the schools.

It is contended also that the act should not be construed retroactively. There is no constitutional provision against retroactive legislation as such, and if there were it would not prevent a provision of this kind. *Peacock v. Republic,* 11 Haw. 409. And, as a question of construction as distinguished from one of power, the provision in question when construed as contended for by the county is not obnoxious to the rule against retroactive legislation. It provides merely for a division which it was entirely competent for the legislature to make; and, though this is unimportant, the division was to be in the future and, so far as the taxes in question are concerned, the counties were to share only what was to be collected in the future. The legislature might reasonably have provided either way. It provided one way though perhaps unconsciously as to which way.

The offer to show the actual intention of the legislature by the testimony of several of its members was properly refused.

The judgment appealed from is affirmed.

*E. A. Douthitt, County Attorney of Oahu, D. H. Case, County Attorney of Maui,* and *J. L. Coke* for the petitioner.

*M. F. Prosser, Deputy Attorney General,* for respondent.

